The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD WIESER,<br><br>Plaintiff,<br><br>v.<br><br>HERTZ LOCAL EDITION TRANSPORTING, INC., *et al.*,<br><br>Defendants. | NO. 26-cv-263-RSL<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

This matter is before the Court on "Defendant Hertz Local Edition Transporting, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint" pursuant to Fed. Rule Civ. P. 12(b)(6). Dkt. 28. Plaintiff Richard Wieser ("Wieser") opposes the motion. Dkt. 30. Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court denies the motion for the reasons set forth below.

**BACKGROUND**

Wieser was employed by Hertz Local Edition Transporting, Inc. ("Hertz") as an hourly Transporter from June 2019 until April 21, 2025, when Hertz terminated his employment. Dkt. 26 ¶ 8. Wieser's duties as a Transporter required him to operate Hertz company-owned vehicles and to ride as a passenger in those vehicles as Transporters moved cars between Hertz's Seattle-area rental locations. *Id*. ¶ 12. Wieser alleges that, on May 15, 2024, a coworker verbally threatened him "with bodily harm in the workplace." *Id*. ¶ 13. He further alleges that he reported the threats through Hertz's internal complaint process and verbally reported them to Inez Kekahuna, Ziba Dean, and Cheryl Croft, three supervisors with authority over him. *Id*. ¶ 15. Wieser claims that he told each supervisor that he feared for his physical safety and requested a transfer away from the coworker. *Id*. ¶¶ 15–16. According to Wieser, Hertz denied his transfer request without explanation and "took no meaningful corrective action" in response to his reports. *Id*. ¶ 17.

On March 3, 2025, Hertz issued Wieser a "Last and Final Written Warning, Job Performance," signed by Kekahuna. *Id*. ¶ 18. According to the Second Amended Complaint, the warning stated that Wieser had, on an unspecified date, driven "in an erratic and reckless manner" with another employee and a customer in the vehicle and that police had "pulled [him] over." *Id*. Wieser disputes the factual premise of the warning, including that he drove erratically or recklessly and was pulled over by police, and alleges

that the incident described by Hertz is unsupported by any contemporaneous police citation, traffic infraction, or other governmental record. *Id*.

Wieser asserts that on March 28, 2025, the coworker who had previously threatened him drove a Hertz van in which Wieser and other Transporters were passengers at speeds exceeding 90 miles per hour. *Id*. ¶ 21. Wieser claims that he made a formal complaint to Anthony Welch, another Hertz supervisor, reporting the coworker's driving and stating that he believed the conduct violated Washington law and posed an imminent risk of death or serious physical injury to himself and the other Transporters. *Id*. ¶¶ 25–26. According to Wieser, Hertz took no meaningful corrective action in response to the complaint. *Id*. ¶ 27.

On April 17, 2025, "an event occurred involving [a Hertz] vehicle while [Wieser] was operating it." *Id*. ¶ 28. The Second Amended Complaint does not specify what occurred but alleges that Wieser disputes the circumstances surrounding the event, including any allegation that he was at fault or negligent. *Id*. Four days later, on April 21, Hertz terminated Wieser's employment. *Id*. ¶ 29. Wieser alleges that the termination letter identified two grounds for the termination: the March 3 "Last and Final Written Warning" and the April 17 vehicle event. *Id*.

Wieser claims that Hertz's stated reasons for terminating him were pretextual and that his workplace-safety complaints were a substantial factor in Hertz's decision to

terminate his employment. *Id*. ¶¶ 31, 40. He asserts a single claim under Washington common law for wrongful discharge in violation of public policy and seeks damages, reinstatement or front pay, and attorney's fees and costs. *Id*. ¶¶ 33–43 & Prayer for Relief.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Dismissal is appropriate only where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must accept all material factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and construe the complaint in the light most favorable to the plaintiff. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Although detailed factual allegations are not required, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." *Id*.

## DISCUSSION

### Washington's Common-Law Claim for Wrongful Discharge in Violation of Public Policy

Washington recognizes a common-law claim for wrongful discharge in violation of public policy as a narrow exception to the at-will employment doctrine. *Thompson v.*

*St. Regis Paper Co*., 102 Wn.2d 219, 232 (1984). The tort generally applies in four circumstances: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, *i.e*., whistle-blowing." *Martin v. Gonzaga Univ*., 191 Wn.2d 712, 723 (2018) (*quoting Gardner v. Loomis Armored, Inc*., 128 Wn.2d 931, 936 (1996)). When a plaintiff claims that he was terminated for conduct that falls within one of these recognized categories, courts apply the framework established in *Thompson*. *Martin*, 191 Wn.2d at 724–25. Under that framework, the plaintiff must first identify a clear mandate of public policy implicated by the conduct for which he alleges he was discharged. *Id*. at 725. If he does so, he must then show that the public-policy-linked conduct was a significant factor in the decision to discharge him. *Id*.

**The Parties' Arguments**

Wieser contends that the Second Amended Complaint states a claim for wrongful discharge in violation of public policy under two of the recognized common categories. First, he argues that his termination falls within the fourth category—discharge in retaliation for reporting employer misconduct—because he reported dangerous and unlawful conduct by a coworker acting in the course of his employment and because

Hertz failed to remedy the reported safety hazard. Second, and independently, Wieser argues that his termination falls within the third category—discharge for exercising a legal right or privilege—because RCW 49.17.160 protects an employee's right to complain about unsafe working conditions and his internal complaint to Hertz constituted an exercise of that right. Wieser alternatively argues that his claim survives under the Perritt framework.

Hertz disputes each theory. It argues that Wieser cannot proceed under the fourth category because he complained about misconduct by a coworker rather than illegal or wrongful conduct by Hertz itself. As to the third category, Hertz argues that Wieser's internal complaint did not constitute the exercise of a legal right or privilege because he did not invoke a statutory complaint process or other formal legal protection. Hertz further contends that Wieser cannot establish causation because the March 28, 2025 complaint was submitted anonymously. Finally, Hertz argues that the claim fails under the alternative Perritt framework because Wieser has not identified a sufficiently clear mandate of public policy.

The Court need not resolve all of these arguments. The recognized common categories provide alternative bases for a wrongful-discharge claim; a plaintiff need not establish that his discharge fits more than one category. Moreover, the Perritt framework applies only when the claim does not fit within one of the recognized common categories.

*Martin*, 191 Wn.2d at 724. Because, as discussed below, the Second Amended Complaint adequately alleges that Wieser was discharged for exercising a legal right or privilege under the third common category, the Court need not determine whether his allegations also constitute whistleblowing under the fourth category or independently satisfy the Perritt test.

**Exercising a Legal Right or Privilege**

Wieser contends that his claim falls within the third common category because he exercised a legally protected right to complain about unsafe working conditions. Specifically, he relies on RCW 49.17.160(1), which prohibits an employer from discharging or discriminating against an employee because the employee "has filed any complaint . . . under or related to" the Washington Industrial Safety and Health Act ("WISHA") or has exercised "any right afforded by" WISHA. Hertz responds that Wieser's internal complaint did not constitute the exercise of a legal right because he did not invoke a statutory complaint process or otherwise exercise a formal legal entitlement or protection.

WISHA expressly reflects Washington's policy of protecting workplace safety. The Legislature enacted WISHA "to assure, insofar as may reasonably be possible, safe and healthful working conditions" for persons working in Washington. RCW 49.17.010. WISHA's implementing regulations make clear that an internal complaint to an employer

may itself constitute the exercise of a right protected by RCW 49.17.160. WAC 296-360-100 provides that the protection afforded by RCW 49.17.160 is not limited to formal requests for inspection or other complaints made to a government agency. The regulation explains that the range of complaints "related to" WISHA extends beyond formal requests for inspection and specifically provides that "[c]omplaints to employers, if made in good faith, are related to WISHA," and that "an employee is protected against discharge or retaliation caused by [such] a complaint to the employer." WAC 296-360-100(1), (3). Indeed, the regulation expressly states that the purpose of WISHA would be "seriously undermined if employees were discouraged from lodging complaints … with their employers." WAC 296-360-100(3). That protection is limited to complaints concerning "conditions at the work place," as distinguished from complaints concerning only general public safety and health. *Id*. § 296-360-100(4). Thus, Washington law expressly protects an employee's right to make a good-faith internal complaint to his employer concerning workplace safety.[1]

[1] WAC 296-360-100 was amended effective February 6, 2026, after the events alleged in the Second Amended Complaint. *See* WSR 26-02-055. The amendment replaced references to "discrimination" with "retaliation" but did not alter the substantive protections afforded by the regulation. *Id*. ("This update does not change the underlying protections that currently exist today."). The version in effect during the relevant period likewise provided that good-faith complaints to employers are "related to WISHA" and that employees are protected against discharge or discrimination because of such complaints. Former WAC 296-360-100(3).

The Second Amended Complaint plausibly alleges that Wieser exercised that right. Wieser claims that, as part of his employment, he and other Hertz employees traveled between Hertz locations in Hertz vehicles. Dkt. 26 ¶ 12. He further alleges that on March 28, 2025, a coworker drove a Hertz van carrying Wieser and other Hertz employees at speeds exceeding 90 miles per hour and that Wieser thereafter made a good-faith complaint to his supervisor, Anthony Welch, reporting that the conduct endangered him and the other employees and posed an imminent risk of death or serious physical injury. *Id.* ¶¶ 21, 25. These allegations plausibly describe a complaint concerning "conditions at the work place" within the meaning of WAC 296-360-100(4), rather than a complaint touching only on general public safety. WISHA, moreover, broadly defines a "workplace" to include any "place where an employee or employees are employed for the performance of labor or service over which the employer has the right of access or control." RCW 49.17.020(9). Accepting the allegations as true and drawing all reasonable inferences in Wieser's favor, the Court cannot conclude at the pleading stage that a complaint concerning the allegedly dangerous operation of a Hertz vehicle transporting Hertz employees in the course of their employment falls outside that protection. Hertz's contention that Wieser has not identified a WISHA safety standard specifically regulating the driving at issue does not alter the analysis. WAC 296-360-100

protects good-faith complaints concerning workplace conditions; it does not require an employee's complaint to identify a particular WISHA safety standard.

Nor was Wieser required to pursue the administrative remedies provided by RCW 49.17.160 before asserting the common-law tort. The statute distinguishes between the conduct protected from retaliation and the procedures available after retaliation occurs. Subsection (1) prohibits retaliation for protected complaints and other exercises of WISHA rights; subsections (2) through (5) establish procedures through which an employee who believes he has suffered retaliation may seek relief from the Department of Labor and Industries ("L&I"). RCW 49.17.160(1)–(5). Wieser does not assert a statutory retaliation claim under RCW 49.17.160; he relies on that provision as the source of the legal right and public policy underlying his common-law wrongful-discharge claim.

*Smith v. Bates Technical College*, 139 Wn.2d 793 (2000) confirms this distinction. There, the Washington Supreme Court held that a public employee's pursuit of a grievance constituted the exercise of a protected legal right and could support a wrongful-discharge claim. *Id*. at 807–08. The court separately rejected the employer's contention that the employee was required to exhaust available administrative remedies before pursuing the tort, explaining that a wrongful-discharge claim is independent of the statutory or contractual scheme giving rise to the underlying right. *Id*. at 809–11. The

same distinction applies here. Whether Wieser complied with the procedures necessary to obtain relief directly under RCW 49.17.160 does not determine whether his underlying internal safety complaint was an exercise of a legal right protected by Washington law. Consistent with *Smith*, RCW 49.17.160(10) further provides that nothing in the statute diminishes an employee's rights, privileges, or remedies under other state law.

*Dannan v. City of Yakima*, 2026 WL 37623 (E.D. Wash. Jan. 6, 2026), does not suggest otherwise. *Dannan* dismissed a statutory WISHA retaliation claim because the plaintiff had not satisfied the procedural prerequisites for bringing that statutory claim; it did not hold that compliance with those procedures is required before an employee may pursue an independent common-law wrongful-discharge claim.

Hertz relies on *Hause v. Spokane County*, 31 Wn. App. 2d 1076 (2024) (unpublished), but that decision does not require a different result. *Hause* stated that the plaintiff had not shown that he filed a complaint under or related to WISHA and noted that he had not obtained an L&I letter authorizing suit. The court also concluded that he was required to follow WISHA procedures before relying on WISHA regulations. But *Hause* did not address WAC 296-360-100, which expressly provides that good-faith complaints made directly to an employer are "related to WISHA," nor did it address *Smith's* holding that an employee need not exhaust administrative remedies before bringing an independent common-law wrongful-discharge claim. *Hause* is unpublished

and therefore does not overcome the statutory and regulatory text or the Washington Supreme Court's holding in *Smith*.

Hertz's reliance on *Sheaffer v. Superior Tank Lines Northwest Division, LLC*, 2019 WL 2476636 (W.D. Wash. June 13, 2019) is also misplaced. There, the plaintiff did not allege that his discharge fell within one of the recognized common categories and instead sought to derive a public policy prohibiting firearms in the workplace from WISHA's general workplace-safety provisions and Washington's firearms statutes. *Id*. at *3–4. The Court concluded that those provisions did not establish the specific public policy asserted. Here, by contrast, Wieser does not ask the Court to derive from WISHA a public policy specifically prohibiting reckless driving. He relies on RCW 49.17.160 and WAC 296-360-100, which expressly protect an employee's right to make a good-faith workplace-safety complaint directly to an employer.

Accordingly, the Second Amended Complaint plausibly alleges that Wieser exercised a legal right or privilege when he complained to Hertz about the allegedly dangerous operation of the company van. His allegations therefore fall within the third recognized category of wrongful-discharge claims.

**Clear Mandate of Public Policy**

Having determined that the Second Amended Complaint plausibly alleges that Wieser exercised a legal right or privilege, the Court next considers whether the conduct

for which he was allegedly discharged implicates a clear mandate of public policy. *See Martin*, 191 Wn.2d at 724–25. It does. As discussed above, WISHA expressly reflects Washington's policy of assuring safe and healthful working conditions, *see* RCW 49.17.010, and RCW 49.17.160 prohibits retaliation against employees for exercising rights protected by WISHA. WAC 296-360-100, in turn, expressly extends that protection to good-faith complaints made directly to an employer concerning workplace conditions. The public policy implicated by Wieser's alleged discharge therefore is not merely a generalized interest in workplace safety, but Washington's expressly stated policy of protecting employees who complain about unsafe workplace conditions from retaliation. Because the conduct for which Wieser alleges he was discharged—his complaint about the allegedly dangerous operation of Hertz's van while transporting Hertz employees—is expressly protected by these provisions, he has adequately identified a clear mandate of public policy implicated by his alleged discharge.

**Causation**

Wieser must also plausibly allege that his protected conduct was a significant factor in Hertz's decision to terminate him. *Martin*, 191 Wn.2d at 725; *Wilmot v. Kaiser Aluminum & Chem. Corp*., 118 Wn.2d 46, 75 (1991). Because retaliatory motive ordinarily must be established through circumstantial evidence, a plaintiff may rely on facts showing that he engaged in protected conduct, the employer knew of that conduct,

and the employer thereafter discharged him. *Wilmot*, 118 Wn.2d at 69. Temporal proximity between the protected conduct and the adverse employment action may also support an inference of causation. *Cornwell v. Microsoft Corp*., 192 Wn.2d 403, 416 (2018).

The Second Amended Complaint adequately alleges causation. Wieser claims that he made his protected workplace-safety complaint on March 28, 2025, and that Hertz terminated him approximately 24 days later, on April 21, 2025. Dkt. 26 ¶¶ 25, 29. He further alleges that Anthony Welch personally received the March 28 complaint and that Welch and other supervisors with knowledge of Wieser's protected complaints participated in the decisional chain leading to his termination. *Id*. ¶¶ 30, 41. He also claims that Hertz took no meaningful corrective action in response to the complaint, deviated from its practice of progressive discipline, and treated Wieser differently from other Transporters in similar circumstances. *Id*. ¶¶ 27, 31. Taken together, these allegations permit a reasonable inference that Wieser's protected conduct was a significant factor in his termination.

Hertz argues that the March 28 complaint cannot support causation because Wieser submitted it through an anonymous email account and Hertz therefore could not have known that he was the complainant. Dkt. 31 at 6–7. That argument depends, however, on treating an anonymous email attached to the declaration of Hertz's counsel

as the complaint alleged in the Second Amended Complaint. Dkt. 29, Ex. 1. It is questionable whether the Court may consider the email on a motion to dismiss because the Second Amended Complaint does not refer to the email itself or necessarily rely on its contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018).

Even if the Court considers the email, however, it does not resolve the issue in Hertz's favor. The Second Amended Complaint does not allege that Wieser made his complaint anonymously; rather, it alleges that Wieser made a complaint to Welch on March 28 and that Welch personally received Wieser's complaint. Dkt. 26 ¶¶ 25, 30. Although counsel's declaration characterizes the attached email as "Plaintiff's March 28, 2025 anonymous complaint," the declaration does not identify any basis for concluding that Wieser authored the email, and nothing on the face of the email identifies him as its author. Dkt. 29 ¶ 2. The Court therefore cannot use the email to resolve against Wieser the factual question whether the complaint alleged in the Second Amended Complaint was made anonymously.

Accordingly, the Second Amended Complaint plausibly alleges that Wieser's exercise of his protected right to complain about workplace safety was a significant factor in Hertz's decision to terminate him. Because Wieser has adequately alleged a wrongful-discharge claim under the third recognized common category, the Court need not

determine whether his allegations also support a claim under the fourth category or satisfy the Perritt framework.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Hertz's motion to dismiss the Second Amended Complaint (Dkt. 28).

Dated this 8th day of September 2026.

Robert S. Lasnik
United States District Judge